IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 26, 2005 Session

## STATE OF TENNESSEE v. PETER L. GUYNN

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-102-016     Timothy L. Easter, Judge**

**No. M2003-02917-CCA-R3-CD - Filed April 22, 2005**

The Defendant pled guilty to aggravated robbery and was also found guilty after a bench trial of especially aggravated kidnapping. The trial court sentenced the Defendant as a Range II, multiple offender to thirty-five years for the Class A felony especially aggravated kidnapping conviction, and to fifteen years for the Class B felony aggravated robbery conviction. The two sentences were ordered to be served consecutively. On appeal, the Defendant argues two issues: 1) his conviction for especially aggravated kidnapping violated his right to due process pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), and; 2) the trial court erred in imposing excessive sentences and in running the sentences consecutively. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Eugene Honea, Franklin, Tennessee, for the appellant, Peter L. Guynn.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Ron Davis, District Attorney General; and Derek Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The convictions at issue in this case stem from an August 6, 2001, incident in which the Defendant, Peter Guynn, robbed a Brentwood gift store at gunpoint. He tied up and assaulted the shop owner in a back room before fleeing with approximately $100 in cash. The victim, Amy Husband, was eventually able to free herself and make her way to the front of the shop where she was discovered by a customer. The victim identified the Defendant in a photographic line-up, and

several months after the incident the Defendant was arrested in Florida and transported back to Tennessee. In December of 2001, the Defendant waived his <u>Miranda</u> rights and gave a taped confession to the Brentwood Police.

In January of 2002, the Defendant was indicted by a Williamson County grand jury on two charges: especially aggravated kidnapping and aggravated robbery. The Defendant waived his right to a jury trial, and entered a plea of guilty to the aggravated robbery charge and not guilty on the especially aggravated kidnapping charge. In May of 2003, the Defendant received a bench trial on the especially aggravated kidnapping charge.

At trial, the victim testified that on the morning of August 6, 2001, the Defendant entered her gift store and informed her he was shopping for a gift for his wife. The Defendant asked to look at merchandise in the back of the store, and the victim agreed. Shortly thereafter the Defendant came up behind the victim, pointed a gun at her and demanded, "give me everything you have." The victim stated she was "terrified," but opened the cash register. The Defendant took approximately $100 in cash, then asked for the "rest." The victim explained that there was no more money, and showed the Defendant an empty bank bag.

The Defendant then forced the victim into a small room at the back of the store and tied her hands behind her back with a green rope. The victim began to scream and the Defendant hit her in the head with his fist and told her to "shut up." The Defendant then asked the victim to lie down on the floor, and she began to scream again. The Defendant again hit her and told her to be quiet. The Defendant tied the victim's feet and told her to stay where she was. The victim testified that at this point she "didn't know if she was going to be shot or raped." However, the Defendant closed the door to the room and left. The victim testified that the Defendant had already taken the cash before tying her up and did not take anything after he restrained her.

The victim further testified that after she heard the Defendant walk out of the store, she managed to get her hands in front of her and loosened the rope on her feet enough to exit the back room and move to the sales counter. The victim testified that it took her "about a minute" to sufficiently free herself so she could leave the back room. The victim stated that she called her parents, and soon thereafter a family friend walked into the store, untied her hands and dialed 911. Because she was tied up in the back room, the victim testified that she could not observe which way the Defendant went when he left the store or what type of vehicle he drove. After giving a statement to the police, the victim went to a doctor's office for treatment of her head wounds. The victim stated that she could not close her jaw for several weeks after the assault.

Mr. Rick Frawley testified that he owned the store next door to the victim's shop, and on the morning of the robbery he observed a man fitting the general description of the Defendant pull into the parking lot in a tan Ford Ranger pickup truck and walk toward the victim's store. He also saw the man return to his truck a short time later. After learning of the robbery, he gave a description of the Defendant's truck to the police.

Detective William Ambrose of the Brentwood Police Department testified that he was assigned to investigate the robbery and kidnapping. When he arrived at the scene of the crime, he first observed a length of green rope on the floor of the store by the front door. He talked with the victim, who had visible injuries from the assault. Det. Ambrose later arranged for a composite artist to meet with the victim and draw a picture of the assailant. This picture and the description of the tan Ford pickup were released to the public, and not long afterwards the Defendant's former wife called Det. Ambrose and gave him an address where the Defendant was known to be staying with a girlfriend. Shortly thereafter the Defendant was determined to be a suspect, and in October of 2001, the victim identified the Defendant's photo in a photographic line up. An arrest warrant was issued and the Defendant was apprehended by Panama City, Florida police in November of 2001.

Detective Ambrose stated that he drove to Florida to get the Defendant. On the trip back, the Defendant asked if he was being arrested for his parole violation. When the Detective stated he was under arrest for a robbery in Brentwood, the Defendant admitted he committed the crime. When they returned to the Brentwood police station, the Defendant formally waived his Miranda rights and issued a full confession to the robbery.

At trial the Defendant did not testify on his own behalf and presented no witnesses. However, through counsel he maintained that the gun used was merely a toy gun, and while he admitted to committing robbery, he argued that the detention of the victim was not a separate crime. The trial court accepted the Defendant's guilty plea on the aggravated robbery charge and found the Defendant guilty of especially aggravated kidnapping.

At the sentencing hearing, the State called Ms. Marjorie Crowell, who testified that the Defendant robbed and kidnapped her in 1983. Ms. Crowell stated that she was working as a cosmetologist when the Defendant robbed her at gunpoint, tied her up, blindfolded her, placed tape across her mouth, and placed her in a closet. The Defendant escaped with approximately $800. He was eventually caught and convicted of robbery and aggravated kidnapping in 1984. Ms. Crowell testified that the ordeal, although it happened over twenty years prior, still made her fearful.

The victim in this case also testified at the sentencing hearing, stating that she could not sleep and suffered from recurring nightmares because of the incident. The Defense called as its only witness Mr. David Pratt of the Williamson County Parole and Probation Office who prepared the Defendant's pre-sentence report. Mr. Pratt testified that the Defendant had a clean record from his release from prison on parole in 1988 until his crimes at issue in this case were committed in 2001. At the conclusion of the sentencing hearing, the trial court found that the Defendant was a Range II, multiple offender and enhanced both of the Defendant's sentences because he committed his crimes while on parole from a prior felony. The court imposed sentences of thirty-five years for the Defendant's Class A felony especially aggravated kidnapping conviction and fifteen years for his Class B felony aggravated robbery conviction. The court also determined that the Defendant was a "dangerous offender" and ordered that his sentences by served consecutively, for an effective sentence of fifty years. The court entered final judgments for the two convictions on October 8,

2003. The Defendant filed a notice of appeal on December 5, 2003. This Court granted the Defendant's motion to accept a late filed notice of appeal on December 11, 2003.

**ANALYSIS**

**I. State v. Anthony Due Process Violation**

On appeal, the Defendant claims that his rights to due process as guaranteed by the "United States Constitution" and "Article I, section 8 of the Tennessee Constitution," were violated pursuant to State v. Anthony, 817 S.W. 2d 299 (Tenn. 1991), when he was convicted of both especially aggravated kidnapping and the accompanying felony of aggravated robbery. Specifically, the Defendant asserts that the elements of his kidnapping conviction were essentially incidental to the acts that constituted his aggravated robbery conviction. We disagree.

Tennessee law defines robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A robbery becomes aggravated when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1).[1] Especially aggravated kidnapping in Tennessee is "false imprisonment, as defined in [Tennessee Code Annotated] § 39-13-302 [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). The offense of false imprisonment is committed when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302.

Our supreme court has held that a separate conviction for kidnapping may violate due process if the kidnapping was "essentially incidental" to the accompanying felony conviction and was not "significant enough, in and of itself, to warrant independent prosecution." Anthony, 817 S.W.2d at 306. In State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), the court crafted a two-prong test for identifying Anthony due process violations. First, a court must determine "whether the movement or confinement was beyond that necessary to consummate" the felony accompanying the kidnapping charge. Dixon, 957 S.W.2d at 535. Second, "the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. The court has also held that an "Anthony inquiry is not a jury question," but rather a matter of law for the court to determine. State v. Cozart, 54 S.W.3d 242, 247 (Tenn. 2001).

The Defendant asserts that his convictions for both aggravated robbery and especially aggravated kidnapping violated his due process rights pursuant to "Anthony and its progeny." The Defendant notes that the court in Anthony held that "every robbery, by definition, involves some detention against the will of the victim," but "[t]his does not mean the legislature intended that every robbery should also constitute a kidnapping . . . ." Anthony, 817 S.W.2d at 306. According to the

---

[1]The Defendant pled guilty to the charge of aggravated robbery and does not challenge his conviction for this charge on appeal.

Defendant, <u>Anthony</u> mandates that the kidnapping statute "must be construed narrowly . . . ergo, it is only logical that the <u>Anthony</u> test/inquiry must also be applied narrowly."

In the case at hand, while the Defendant asserts that his act of binding the hands and feet of the victim "may have facilitated his escape," he maintains it "did not substantially increase the risk of harm" to the victim. He further claims that his blows to the victim's head "caused her fright and pain but no injury," and his confinement of the victim did not lesson his risk of detection because he was eventually apprehended. In sum, the Defendant asserts his movement and confinement of the victim in a back room was merely "incidental to the robbery" and did not "decrease the probability of Mr. Guynn's detection; nor did it prevent Ms. Husband from summoning help; nor did it increase Ms. Husband's risk of harm."

This Court concludes that the Defendant in this case could have performed the robbery in the front of the store without moving the victim to the back room, confining her and assaulting her. Indeed, the proof clearly shows that the aggravated robbery had been accomplished at the time the Defendant removed the victim to the back room and bound her hands and feet with rope. Thus, the "movement or confinement was beyond that necessary to consummate" the accompanying felony charge of aggravated robbery. <u>Dixon</u>, 957 S.W.2d at 535. Furthermore, the confinement prevented the victim from immediately summoning help and lessened the Defendant's risk of detection. <u>See id.</u> The victim was unable to call for help until well after the Defendant had fled the scene, and was unable to see which way the Defendant went or identify his means of transportation. Finally, the Defendant hit the victim in the head multiple times while he was binding her hands and feet, demonstrating that this separate act of confinement after the robbery created a significant danger to the victim and increased her risk of harm. <u>See id.</u>

Accordingly, we determine that the removal of the victim to the back room of the store and her confinement were not necessary to commit aggravated robbery, but did prevent the victim from summoning help, lessened the Defendant's chance of detection, and subjected the victim to increased risk of harm. Therefore we conclude the evidence supports a separate conviction for especially aggravated kidnapping. This issue is without merit.

## II. Sentencing

The Defendant further argues that the trial court erred in imposing excessive sentences and in running the sentences consecutively. The Defendant asserts that <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004), requires a reduction in the "aggregate" sentence he received, and that the trial court erroneously found he was a "dangerous offender" when it determined that his sentences should be served consecutively. The Defendant also asserts that running his two sentences consecutively, resulting in an effective sentence of fifty years, imposes sentences not "reasonably related" to the crimes he committed. We cannot conclude that the trial court erred or abused its discretion in its sentencing determination.

**A. Standard of Review**

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

**B. Excessive Sentence**

The Defendant asserts that the trial court erred by imposing an excessive sentence for both his Class A felony especially aggravated kidnapping conviction and his Class B felony aggravated robbery conviction. In calculating a sentence for a Class A felony conviction, the presumptive sentence is "the midpoint of the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence at or above the midpoint, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class A felony requires the court to start at the midpoint, next assign the proper weight for the enhancement factor(s), and finally apply a reduction within the range as appropriate for the mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The sentence range for a Class A felony for a Range II, multiple offender is "not less than twenty-five (25) nor more than forty (40) years." Tenn. Code Ann. § 40-35-112(b)(1).

Therefore, the Defendant's presumptive sentence for his Class A felony conviction of especially aggravated kidnapping is the midpoint, or thirty-two and a half years.

In calculating a sentence for a Class B felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class B felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The sentence for a Class B felony as a multiple, Range II offender is "not less than twelve (12) nor more than twenty (20) years." Tenn. Code Ann. § 40-35-112(b)(2). Thus, the presumptive sentence for the Defendant's Class B felony conviction of aggravated robbery is twelve years. However, the weight to be afforded enhancement factors is left to the trial court's discretion so long as it complies with the principles of the sentencing act and the court's finding are supported by the record. See State v. Palmer, 10 S.W.3d 638, 646 (Tenn. Crim. App. 1999).

The trial court determined the Defendant to be a multiple, Range II offender.[2] See Tenn. Code Ann. § 40-35-106. The court next determined that enhancement factor fourteen, committing a felony while on parole from a prior felony conviction, applied to the sentences for both of his convictions. See Tenn. Code Ann. § 40-35-114(14)(B). The court found no mitigating factors applicable in the Defendant's case. Based on these findings, the trial court enhanced the Defendant's sentences beyond the presumptive starting point by two and a half years for the especially aggravated kidnapping conviction, and by three years for the aggravated robbery conviction.

We will briefly address the Defendant's claim of excessive sentences in light of the United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531 (2004). The Tennessee Supreme Court recently considered the Blakely sentencing issues and concluded that Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a jury trial. See State v. Gomez, __ S.W. 3d __. (Tenn. 2005). Accordingly, the Defendant's reliance upon Blakely is misplaced. This issue has no merit.

### C. Consecutive Sentences

The Defendant also asserts that the trial court erred in ordering him to serve his sentences consecutively. To support this claim, the Defendant argues that the trial court failed to make adequate findings that the Defendant was a "dangerous offender," and that the effective fifty-year sentence does not reasonably relate to the offenses he committed. We disagree.

---

[2]While raised as an issue at the sentencing hearing, the Defendant does not now challenge the fact that his criminal record requires that he be sentenced as a multiple, Range II offender.

We begin by noting that it is within the sound discretion of the trial court whether to impose consecutive or concurrent sentences. See State v. Adams, 973 S.W.2d 224, 230-31(Tenn. Crim. App. 1997). A Tennessee court may order consecutive sentences in cases where it finds any of seven statutorily enumerated criteria to be applicable "by a preponderance of the evidence." Tenn. Code Ann. § 40-35-115(b). In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential" for "rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4) and (5). Additionally, we are reminded that "the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Tenn. Code Ann. § 40-35-115 Sentencing Commission Comments.

In the case at hand, the trial court found one consecutive sentencing criterion applied: the Defendant "is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Id. at § 40-35-115(b)(4). The trial court also stated for the record that it imposed consecutive sentences because the Defendant's conduct had "escalated" in its severity, noting that in his 1983 offenses the Defendant did not physically assault his victim as he did in the case at hand. The trial court stated it was concerned about "what will happen next," opining that "[n]ext time maybe he'll pull the trigger." Based on these findings, the trial court concluded that "confinement for an extended period of time is necessary to protect society from this defendant . . . ."

The Defendant objects to the application of consecutive sentencing criterion (b)(4) in which he was labeled a "dangerous offender" for committing a crime with high risk to human life. See Tenn. Code Ann. § 40-35-115(b)(4). The Defendant asserts the trial court did not follow the mandate outlined in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), in which our supreme court ruled that "[e]very offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences," and requires trial courts to make specific findings before the criterion can be applied. Id. at 938. Additionally, the Defendant asserts that his effective fifty-year sentence, almost assuredly a life sentence,[3] does not reasonable relate to the severity of the offenses he committed.

> The Defendant is correct in his assertion that
> the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

---

[3]The Defendant notes that he was fifty-one years old at the time of sentencing, and if consecutive sentences are upheld he must serve 100% of his thirty-four year especially aggravated kidnapping sentence plus at least 35% of his fifteen year aggravated robbery sentence before becoming eligible for early release.

Wilkerson, 905 S.W.2d at 939. However, in the case at hand, the trial court did make adequate findings that the Defendant was a dangerous offender and that an extended sentence was necessary to protect the public. The trial court noted the Defendant robbed the victim at gunpoint, took her to a back room and repeatedly hit her in the head as he bound her hands and feet. At the time he committed these crimes the Defendant was still on parole for his convictions stemming from what the trial court found to be a "remarkably similar" incident. Furthermore, the trial court found that the Defendant's criminal conduct over the years "escalated" and became more violent in the subsequent crimes he committed.

We conclude the trial court's findings are supported by the record. The Defendant was released from prison early following his prior convictions of robbery and kidnapping only to commit a nearly identical crime--this time subjecting his victim to even more violent treatment. Furthermore, the Defendant's act of committing essentially the same offenses again verifies he has little potential for rehabilitation. An extended sentence is clearly warranted in the case at hand to protect the public from any further violent criminal conduct by the Defendant. Moreover, consecutive sentencing reasonably relates to the severity of the Defendant's offenses of aggravated robbery and especially aggravated kidnapping. Accordingly, we affirm the trial court's imposition of consecutive sentencing.

## CONCLUSION

For the foregoing reasons we affirm the judgments of the trial court as to the Defendant's convictions and sentences.

_____
DAVID H. WELLES, JUDGE

-9-